UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES I. WYNN, JR.,

                              Plaintiff,

                                                              DECISION AND ORDER

                                                                02-CV-6503L

            v.

STATE OF NEW YORK, OFFICE
OF CHILDREN AND FAMILY SERVICES,
OATKA RESIDENTIAL CENTER,

                              Defendants.
_____

      Plaintiff James I. Wynn, Jr. ("Wynn") brings this action alleging discrimination in employment on the basis of race against his former employer, the New York State Office of Children and Family Services ("OCFS"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. OCFS now moves for summary judgment. For the reasons that follow, OCFS's motion is granted and the complaint is dismissed.

      Wynn has been employed by OCFS since 1989, assigned to the Oatka Residential Center, a treatment facility for troubled youths. It is undisputed that from 1989 to 1998, Wynn received satisfactory annual performance evaluations. In 1999, Wynn received an unfavorable evaluation from his supervisor, George Patterson. Wynn alleges that at the time he received the 1999 evaluation, Patterson indicated that facility director Gary Almond, who was required to approve all

performance evaluations, had instructed him to evaluate Wynn poorly.  Patterson stated that he believed Almond had "problems" with African-American employees, and guessed that maybe Almond disliked plaintiff because he resembled someone with whom Almond's wife had allegedly had an affair.  At his deposition, Patterson testified that Almond's attitude toward Wynn had been negative from the beginning, and that Almond didn't treat anyone else the way he treated Wynn.

Following the negative 1999 evaluation, Wynn was suspended from his employment for one year.  The New York State Disciplinary Panel Administration reviewed the matter, and determined that Wynn had engaged in a number of serious violations and derelictions of duty which justified the one-year suspension from his employment, but fell just short of constituting sufficient grounds for termination.  The Panel noted its hope that the imposed sanction determination would:

> provide Mr. Wynn with a final opportunity to return to the level of care and performance that characterized his first six years of State service.  If this last chance does not bring about positive improvements in his care for the residents and dealings with co-workers, he can expect that his continued employment with the State will be short-lived.

Dkt. #44, Exh. C.

Wynn returned from the suspension in early 2001, and remarked to Almond that he felt he shouldn't have been suspended at all.  Almond allegedly replied that he was disappointed that Wynn had not "learned a lesson" from the suspension, and indicated that he would be scrutinizing Wynn's performance in the future with the goal of having him terminated.

Evette Buntley, an OCFS employee, testified in an affidavit that in October of 2001, Almond had approached her and suggested that she would be considered for a promotion if

she would agree to falsely state that she saw Wynn sleeping and watching television while on duty. Buntley refused.

At the end of 2001, Wynn received a second unsatisfactory annual evaluation from his new supervisor, Arthur Brown. As a result, Wynn was suspended again on January 9, 2002. This evaluation and suspension were subsequently rescinded by order of the OCFS Agency Level Appeal Board. In early 2002, plaintiff was served with disciplinary charges of misconduct against a co-worker, and was suspended again for approximately six months.

Subsequent to 2002, plaintiff's annual performance has been assessed as satisfactory. Wynn remains employed by OCFS.

Wynn filed a charge of race-based discrimination with the EEOC on May 1, 2002, citing his negative performance evaluations, suspensions and the disciplinary charges.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and

harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Moreover, although courts must construe plaintiff's *pro se* pleadings liberally and interpret them as raising the strongest arguments that they suggest, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994), "proceeding *pro se* does not otherwise relieve [a plaintiff] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *16 (S.D.N.Y. 2003) (citing cases); *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995) (a "*pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment"), *citing Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Wynn's claims of employment discrimination pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a *prima facie* case, the burden shifts to defendant to

articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

While granting Wynn the liberal interpretation and favorable inferences due to him both as a *pro se* plaintiff and as a nonmovant, I find that Wynn has nonetheless failed to establish a *prima facie* case of discrimination.

Wynn identifies the following events as discriminatory: (1) the unfavorable annual performance evaluation in 1999 and resulting suspension; (2) Almond's comment to Wynn following Wynn's return from the year 2000 suspension that he would be carefully scrutinizing Wynn's work; (3) the unfavorable 2001 annual performance evaluation; and (4) Almond's alleged leveling of misconduct charges against Wynn, following an altercation with a co-worker.

As an initial matter, Wynn's claims with respect to his 1999 performance evaluation and resulting suspension are untimely. Wynn's EEOC charge was filed on May 1, 2002, placing his 1999 evaluation and suspension well outside of the 300-day look back period. *See* 42 U.S.C. §2000e-5(e); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108, 122 S. Ct. 2061 (2002) (requiring "strict adherence" to the 300-day statute of limitations). Although Wynn argues that the 1999 actions should be considered part of a "continuing violation" for statute of limitations purposes, the 1999 evaluation and suspension are clearly

discrete acts of discrimination, separately actionable and temporally distinct from OCFS's evaluation of Wynn in 2001.  As such, Wynn was required to timely file a discrimination charge with respect to each evaluation which resulted in an adverse employment action, and his failure to do so with respect to his 1999 evaluation and suspension renders those claims untimely.  *See Ledbetter v. The Goodyear Tire & Rubber Company*, 127 S.Ct. 2162, 2175 (2007) (where employee alleges "a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation"), *citing Morgan*, 536 U.S. 113 at 117.

In his opposition to OCFS's motion for summary judgment, Wynn also attempts to expand the scope of his Complaint to include a claim of discrimination in the form of a hostile work environment.  Wynn argues that the allegations of his complaint, taken as a whole, indicate a pattern of discriminatory treatment wherein Almond sought to create a disciplinary paper trail that would culminate in Wynn's termination, and that this course of conduct is "reasonably related" to the incidents described in his EEOC charge.

In order to prevail on a claim that unlawful harassment has caused a hostile work environment in violation of Title VII, a plaintiff must demonstrate that his workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to his employer.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  *See also  Mack v. Otis Elevator Co.*, 326

F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

Here, a careful review of Wynn's Complaint and the EEOC charge upon which it was based yields no factual allegations whatsoever that would support such a claim. Neither Wynn's EEOC charge nor his complaint allege a single instance of offensive or race-based conduct, such as a comment or gesture, that would give rise to an abusive working environment. As such, I find that Wynn has failed to state a hostile work environment claim, or to demonstrate any reasonable relationship between his previous allegations, and the hostile work environment claim he now seeks to pursue.

In light of the foregoing, the Court's review is confined to Wynn's claims of disparate treatment discrimination, arising out of Almond's alleged scrutiny of his performance, his 2001 performance evaluation and the 2002 disciplinary charges.

The first and third prongs of Wynn's *prima facie* case are not in dispute. Wynn is an African-American, and his suspension which was occasioned by the negative 2001 performance review is undisputedly an adverse employment action. *See Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2417 (2006) (suspension, even if rescinded with full back pay, can constitute an adverse employment action for Title VII purposes).

Although OCFS challenges Wynn's assertion that he was performing his position satisfactorily in 2001, that factual issue need not be addressed on this motion in light of

Wynn's ultimate failure to establish his *prima facie* case by producing evidence that would support an inference of discrimination.

It is well settled that an inference of discrimination may be established by a showing that the employer treated workers in a protected group less favorably than others outside of the group, criticized the plaintiff in a degrading manner, or made invidious comments concerning other members of the protected group. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Nonetheless, "Title VII is not a 'general civility code.'" *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Although Title VII "protects employees from improper discriminatory intimidation[,] it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors." *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000). In order to establish his claim of disparate treatment, plaintiff must therefore produce evidence that his employer not only treated him differently from others, but did so because of his race. *Oncale*, 523 U.S. at 79-80.

Wynn has made no such showing here. Brown testified, and Wynn does not dispute, that approximately sixty percent (60%) of the seventeen employees working in Wynn's building in his position at the time of the 2001 evaluation were African-American. (Dkt. #44, Exh. B). Although Patterson allegedly told Wynn at the time of his negative 1999 review – a review that was later upheld by the Disciplinary Panel Administration – that

Almond had pressured him to review Wynn negatively, and had "problems" with African-American employees, Patterson's statement is uninformed by any details and appears entirely speculative, and there is no evidence that other African-American employees at OCFS were receiving unsatisfactory annual performance reviews or suspensions. Wynn has consistently alleged, and Patterson also testified, that Wynn was the *only employee* with whom Almond had consistent interpersonal difficulties. Moreover, Wynn alleges no racially offensive gestures or comments by Almond, or anyone else at OCFS. Thus, while the facts as alleged by Wynn do strongly suggest that Almond particularly disliked Wynn, scrutinized his performance more closely than any of the other employees that he supervised, and went to diabolical lengths to ensure that Wynn would be disciplined for his missteps – both genuine and fabricated – there is no evidence that Almond's treatment of Wynn was motivated by discriminatory animus. *See DeLuca v. Allied Domecq Quick Service Restaurants*, 2006 U.S. Dist. LEXIS 39261 at *9 (E.D.N.Y. 2006) (an employer may undertake an adverse employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"); *Johnson v. New York City Board of Education*, 2000 U.S. Dist. LEXIS 17410 at *25 (E.D.N.Y. 2000) (complaint dismissed where employee based age and race-related discrimination claims on supervisor's micromanagement, undue scrutiny, and hostility, because employee failed to offer any evidence that the employer's activity was motivated by illegal discrimination, did not allege any instance of race or age-based animosity such as a remark, gesture, or innuendo, and the racial demographics of the workplace, which included a number of other African-

American employees, all of whom were receiving satisfactory evaluations, did not imply discrimination). Accordingly, Wynn has failed to establish a *prima facie* case of discrimination, and his discrimination claims must be dismissed.

## Conclusion

For the foregoing reasons, OCFS's motion for summary judgment (Dkt. #41) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice. Plaintiff's motion for a jury trial (Dkt. #46) is dismissed as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      September 4, 2007.